UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JASON SETH PERRY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:20-cv-00156-JPH-DLP |
| | ) |
| RICHARD BROWN, | ) |
| | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jason Perry's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case WVS 19-08-0010. For the reasons explained in this Entry, Mr. Perry's petition is **denied.**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

**B. Disciplinary Proceeding**

On July 31, 2019, LPN Tara Powers wrote a Report of Conduct charging Mr. Perry with a violation of code B-213 (Threatening):

> This nurse, Tara Powers, was assessing offender Jason Perry #138925 for NSC per offender's HCRF. During assessment offender Perry became very agitated when this nurse contradicted the offender's self diagnoses. To which offender Perry then began to advance towards this nurse and was shouting to speak over this nurse. During the shouting offender Perry said, "if we were in gen pop you would not treat me this way because I would beat your ass." After the threat and further advancement custody then removed offender from the medical room.

Dkt. 8-1. Nurse Powers indicated that the incident took place in a medical room of SCU-B east. *Id.*

Mr. Perry received a Notice of Disciplinary Hearing Screening Report notifying of him of the charge on August 7, 2019. Dkt. 8-2. He pled not guilty, requested a lay advocate, and wished to call Correctional Officer Foster as a witness. *Id.* He did not request any physical evidence. *Id.* In a request for interview, Mr. Perry did later request that video be pulled of him being escorted to the B-side location at 11 am because he stated he had not been on the B-side location for thirty days. Dkt. 8-4. There were no cameras, except on the ranges, and no video exists to show if Mr. Perry was escorted to a medical room on the A or B side. *Id.* (response to request for interview).

Officer Willoughby provided a statement that Mr. Perry resided on A west, and he had never escorted him to B side. Dkt. 8-8. Officer Willoughby stated that he witnessed Mr. Perry "being very loud and shouting at Nurse Powers and making threat comments towards Nurse Powers." *Id.*

Officer Foster corroborated Mr. Perry's residence and stated that he was escorted to the A-east medical room. *Id.* Officer Foster further stated:

> I assisted in escorting Offender Perry, Jason DOC#138925, to nurse Powers for nurse sick call. Offender Perry did indeed become upset with the nurse and made

2

  statements that I personally consider to be of a threatening nature, IE, 'If you were out in population it wouldn't be this way', and he also stated that 'she is lucky I dont head butt her' I had motioned for officer Willoughby to lead the offender away from her as offender Perrys demeanor seemed combative.

*Id.*

On August 16, 2019, Nurse Powers provided a statement that she wrote the wrong medical room on the report and that it took place in A-east. *Id.* This correction was made to the conduct report prior to the disciplinary hearing.

A disciplinary hearing was held on August 26, 2019. Dkt. 8-6. Mr. Perry provided a two-page written statement[1] and argued that this happened on the "wrong end" and that this mistake was not a "clerical error." *Id.* As such, Mr. Perry stated his charge should be dismissed because the "crime scene" location could not be changed on the conduct report. *Id.* The disciplinary hearing officer ("DHO") considered the staff reports and evidence from witnesses. *Id.* The DHO stated that the nurse's statement on the conduct report was a clerical error, statements provided cleared up the location mistake, and the "offender's written statement [was] overreaching and not believable" and found Mr. Perry guilty. *Id.* His sanctions included deprivation of 90 days' earned credit time and a one credit class demotion that was suspended (later imposed in another disciplinary case). *Id.*

Mr. Perry appealed to the Facility Head and the IDOC Final Reviewing Authority, but neither appeal was successful. Dkt. 8-10; dkt. 8-11. He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1.

---

[1] In his statement, Mr. Perry wrote that the screening officer did not let him look at his conduct report or the screening report to allow him proper notice to request witnesses and evidence because he was in segregation. Dkt. 8-7. He continued to argue that the conduct report listed the wrong location of the incident and that the officers' and nurse's statements did not match. *Id.* The Court notes that Mr. Perry's letter indicates that he does not deny seeing the nurse that day or having a conversation with her regarding his symptoms. *Id.* The respondent points out that Mr. Perry does not deny making threats to the nurse but states that the words "if and would are only possibilities" of making a threat. *Id.* The DHO clearly documented that the statement was reviewed but it was not believable. Dkt. 8-6.

### C. Analysis

Mr. Perry raises three grounds for relief in his petition: (1) denial of video evidence to prove he was on the A-side of the SCU; (2) the location error was not clerical and the conduct report should not have been changed to conform to the evidence; and (3) the officers' witness statements were inconsistent with the conduct report. Dkt. 1 at 3-4. In his reply, Mr. Perry raises new arguments including that there were two other offenders with his same name in the SCU at one time, that he requested Officer Foster to be present at the hearing and was not allowed to present witnesses in-person, and that he believes he has been written up on false charges due to his criminal conviction. Dkt. 10. The Court need not address these additional issues because new arguments may not be raised for the first time in a reply. *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014).

### 1. Denial of Video Evidence

Mr. Perry argues that he asked for video evidence because the screening officer would not let him see the report to request evidence. Dkt. 1 at 3. Mr. Perry indicates that he wanted video evidence to prove his location was on the A-side rather than B-side of the SCU at the time of this incident. *Id.* He states he was denied video evidence because there were no cameras except for range cameras. *Id.*

"Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). Mr. Perry was not denied evidence where evidence did not exist to show what he wanted to be shown – his escort to the medical room from A-side. Moreover, Nurse Powers indicated in the conduct report that the threat occurred while she was assessing him, and range cameras reasonably would not have captured what occurred in the medical room. As the Court will further discuss below, Mr. Perry's

location is not relevant to the outcome of the DHO's decision, and therefore, his desire to utilize video to prove his location is unnecessary.

If there was error in declining to provide the video evidence of Mr. Perry's movements, such error was harmless. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (holding that harmless error analysis applies to due process violations in prison disciplinary habeas corpus cases).

Accordingly, he is not entitled to habeas relief on this ground.

### 2. Clerical Location Error

Mr. Perry alleges that 13 days after the screening officer improperly screened him, the officer asked Nurse Powers to change the "crime scene" and his bed location, actions he alleges are against IDOC policy. Dkt. 1 at 3. He contends that this was not a "clerical error." *Id.*

The respondent argues that Nurse Powers corrected her mistake regarding Mr. Perry's location prior to his disciplinary hearing, and thus, Mr. Perry had this correction and the witnesses' statements and was on notice of the facts of the case. Dkt. 8 at 9-11. The respondent points to Mr. Perry's extensive two-page written statement as demonstrative of his ability to provide a written defense in his case. *Id.* at 10. The Court finds that the due process requirements under *Wolff* have been satisfied, and that Nurse Power's correction of the side of SCU that Mr. Perry was on was not an essential element of Mr. Perry's charge. Nurse Powers clearly described the incident in the conduct report which was corroborated by the officers' witness statements regarding Mr. Perry's conduct and demeanor.

Mr. Perry's argument that Nurse Powers was allowed to change the conduct report contrary to an IDOC policy fails. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S.

5

472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

Accordingly, Mr. Perry is not entitled to habeas relief on this ground.

### 3. Conflicting Evidence

Mr. Perry argues that Officer Willoughby stated that Mr. Perry was loud and was shouting at Nurse Powers, but he did not describe what Mr. Perry was shouting. Dkt. 1 at 3. He claims Officer Willoughby did not refer to Mr. Perry making an advancement in a threatening way toward Nurse Powers. *Id.* He argues Officer Foster's statement did not include anything about Mr. Perry threatening to beat Nurse Powers or making an advancement – just that she was lucky he did not head butt her, which was not mentioned in the conduct report. *Id.* These arguments do not have merit.

Any differences or discrepancies in witness statements is a matter exclusively for the DHO's resolution. Even if statements are conflicting, it is solely the DHO's responsibility to assess the credibility of the statements and decide which to believe. *See Viens v. Daniels,* 871 F.2d 1328, 1328 (7th Cir. 1989) (federal court does not reweigh prison disciplinary evidence). Here, while three witnesses described the same incident slightly differently, some with more detail than others,

6

there is no indication that any of the statements are completely unworthy of belief. *See Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000) (the reliability of evidence at a prison disciplinary hearing may come into play only if there is "some affirmative indication that a mistake may have been made."). Moreover, Nurse Powers and the officers' accounts are not materially contradictory as to suggest a material and relevant mistake. Rather, the accounts all corroborate that Mr. Perry engaged in conduct that threatened Nurse Powers during a nurse sick call visit. Mr. Perry's arguments that these statements are not identical or nearly identical is without merit.

Accordingly, Mr. Perry is not entitled to habeas relief on this ground.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Perry to the relief he seeks. Accordingly, Mr. Perry's petition for a writ of habeas corpus must be **denied** and the **action dismissed.** Mr. Perry's pending motion to correct the case number on his designation of evidence filed in this case, dkt. [15], is **granted**.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 7/21/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

7

Distribution:

JASON SETH PERRY
138925
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov